DARLAND v. TAYLOR.

52 503
138 671

1. Gift: DECLARATIONS OF DONOR: ACCEPTANCE. Where the holder of certain promissory notes of her grandson destroyed them, afterward stating that she expected to live but a short time and in the event of her death she did not desire him to be obliged to pay them, it was held that such acts constituted a completed and valid gift to the grandson, *causa mortis*, of the amount of the notes, and that his acceptance would be presumed.

*Appeal from Poweshiek Circuit Court.*

SATURDAY, DECEMBER 6.

THE plaintiff, as the administrator of the estate of Alsey Darland, deceased, claims of the defendant, W. H. Taylor, the alleged purchase price of a certain eighty acres of land. The cause was tried by the court as an action in equity. The court found for the plaintiff, and rendered a judgment in his favor for the sum of $640.00. The defendant appeals. The facts are stated in the opinion.

*Lafferty & Johnson* and *Redman & Carr*, for appellant.

*Bolton & McCoy*, for appellee.

DAY, J.—The material facts established by the evidence are as follows: Alsey Darland died on the 25th day of February, 1872, at the age of about seventy-three. She was the mother of Martha P. Taylor, who was the mother of J. D. Taylor and the defendant, W. H. Taylor. Martha P. Taylor had for many years been a widow, and was insane. Alsey Darland had taken care of her daughter ever since she became insane, and had raised her two sons, J. D. and W. H. On the 20th day of

July, 1869, Alsey Darland, in order to make permanent provision for the future support of her daughter Martha P. Taylor, conveyed to her grandson J. D. Taylor eighty acres of land. The price agreed upon for this land was $1,600, of which J. D. Taylor paid $300, and agreed to pay $300 more; and was to have the use of the remaining $1,000 for supporting his mother during her lifetime, and at the death of his mother, Martha P. Taylor, this $1,000 was to go to J. D. Taylor's children. Pursuant to this arrangement J. D. Taylor supported his mother for a time, but finally he left the place, rented it out and ceased to maintain his mother, and Alsey Darland became dissatisfied. Sometime about the 1st of January, 1872, it was arranged between Alsey Darland, W. H. Taylor, and J. D. Taylor, that W. H. should purchase the interest of J. D. in the property, and assume his obligation for the support of their mother. In accordance with this arrangement W. H. paid J. D. $450, the amount of the payment which he had made, and of some improvements which he had placed upon the land, and assumed the payment to Alsey Darland of the deferred payment of $300 and interest. The balance of the consideration, $1,000, he was to have for supporting his mother. W. H. Taylor has supported and cared for his mother ever since this arrangement was made. A short time after this arrangement was made, W. H. Taylor tendered to Alsey Darland his notes for four hundred dollars for the unpaid purchase money. She refused to take the notes, saying that if she wanted anything she could get it as well without a note as with it. Alsey Darland having refused to take the notes, her son Wm. L. Darland took them and locked them up. Two or three weeks thereafter Alsey Darland called for the notes, and her son delivered them to her. About the 1st of February, 1872, which was a little more than three weeks before her death, she tore the notes up. The next morning at the breakfast table she stated that she could not sleep the night before until she got up and tore up the notes on W. H. Taylor. When asked what she did that for, she said that she felt unwell and thought she was liable to die at any time, and if she died she did not want W. H. Taylor to have those notes to pay. At the time Alsey Darland refused

to accept the notes she was talking of going to Oregon, and she then told the defendant if he would pay her $300 she would not charge any interest. Afterward the defendant told his grandmother that he had spoken to some one to borrow the $300 for her, and she then said that $300 or $400 would not get the notes; that she had destroyed them; that she thought she would not live very long, and she didn't intend to leave anything for her children to quarrel over. At the same time she said she did not want the defendant to pay the notes. About two weeks before her death Alsey Darland was taken from her son's, W. L. Darland, to the defendant's. She took sick the next day and remained ill until her death. During this time she said that she wanted the defendant to have what she had for keeping his mother; that his mother would not stay at any other place; that she was studying about a note she had; that she thought about the note while she was staying at Wm. L. Darland's one night after she went to bed, and thought she would get up and destroy the note, so her children would not get it; that she did destroy the note so her children would not get the property, and that W. H. Taylor would get it; that she intended for W. H. Taylor to have it. The court below held that declarations of the deceased are insufficient in themselves to establish a gift; that the recovery of the deceased after the night on which she destroyed the notes operated as a revocation of the so-called gift; that there was no delivery or acceptance, and that the evidence does not show clear and unmistakable proof of a gift. Judgment was accordingly entered against the defendant for the amount of the notes and interest, $640.

The court grounded the opinion that the declaration of the donor is in itself insufficient to establish a gift upon *Burney v. Ball*, 24 Ga., 565. What is there said upon the subject is as follows: "Our opinion is that the declarations of the donor that he had given are always admissible in evidence in cases of this sort. We have heretofore held, and still hold, that they are insufficient of themselves to establish a gift. To constitute a good and valid gift there must be a delivery, actual or constructive, or, as it is termed sometimes, symbolical, or a

writing." It is evident from the foregoing that the court simply determined that the declarations of a donor that he had made a gift are not sufficient without some proof of delivery, actual or constructive. It is not held, nor intimated, that the declaration of the donor is not admissible to establish the facts from which a delivery may be inferred. That such facts may be established by the declaration of the donor we do not doubt.

The court further held that there was no delivery or acceptance of the gift, and that both are necessary. The authorities hold that the delivery may be actual or symbolical. In *Granigan v. Arden*, 10 Johnson, 292, a father bought a ticket in a lottery, which he declared he gave to his daughter, and wrote her name upon it. After the ticket had drawn a prize he declared that he had given the ticket to his child, and that the prize money was hers. This was held sufficient to authorize a jury to infer all the formality requisite to a valid gift, and that the title to the money was complete and vested in the daughter. In *Gardner v. Gardner*, 22 Wendell, 525, a debt contracted by the wife was held to be discharged, as a gift, *causa mortis*, by the husband's destroying the bond, the evidence of the debt, and declaring that the money was hers. See, also, *Blaisdel v. Locke*, 52 N. H., 238.

In *Hillebrant v. Brewer*, 6 Texas, 45, where the father branded certain cattle in his son's name, and recorded the brand, it was held sufficient to establish a symbolical delivery. The destruction of the notes, together with the repeated declarations of the deceased that she did not intend the defendant to pay the debt, constitute a sufficient delivery under the authorities cited. As the gift was for the benefit of the donee and coupled with no condition, his acceptance of it, from all the circumstances proved, in the absence of any opposing testimony, must be presumed. *Blaisdel v. Locke*, 52 N. H., 238 (244).

The court further held that the gift was made by the donor in apprehension of death before morning, and that, as she did not die, there was a revocation of the gift. The evidence does not at all sustain the position that the gift was intended to be

operative only in the event of the death of the donor before morning. Upon the contrary the evidence clearly shows that the deceased desired to discharge the defendant from liability upon the notes, and that the destruction of the notes was made at the time in question because she feared that she might die before morning, and thus be prevented from discharging the defendant as she desired. Afterward, and during her last sickness, and but a short time before her death, the deceased declared that she had destroyed the notes so that W. H. Taylor would get the property, and that she intended him to have it. There was not, we think, any revocation of the gift.

The evidence we think establishes a completed and valid gift, *causa mortis*, of the amount of the notes in question.

REVERSED.