HAGERMAN v. WIGENT.

1. GIFT—SUFFICIENCY OF DELIVERY.

The delivery of a mortgage by its owner to one person, with instructions to deliver the same to another after the owner's death, is a sufficient delivery to meet the requirements of a valid gift *inter vivos.*

2. HUSBAND AND WIFE — WITNESSES — PRIVILEGED COMMUNICATIONS.

3 How. Stat. § 7546, which provides that neither husband nor wife shall, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, is only declaratory of the common law, and does not preclude the survivor from testifying to matters not confidential in their nature, and which must have been intended to be disclosed; as where property was intrusted by a wife to her husband, with instructions to deliver it, after her death, to a person named.

3. EQUITY PLEADING—DEMURRER.

An objection that a bill of complaint is inartificially drawn, in that it states the evidence instead of the facts, can be raised only by demurrer.

Appeal from Hillsdale; Lane, J. Submitted November 22, 1895. Decided January 16, 1896.

Bill by James Hagerman and Abraham L. Hagerman against Andrew J. Wigent, executor of the last will and testament of Mary Raney Pridgeon, deceased, and Fred M. Wigent, to restrain the foreclosure of a mortgage. From a decree for complainants, defendants appeal. Affirmed.

*Guy M. Chester* and *Fred M. Twiss,* for complainants.

*W. J. Sampson,* for defendants.

MONTGOMERY, J. This is a bill filed against the defendant Andrew J. Wigent, executor, and Fred M. Wi-

gent, legatee, under the will of Mary Raney Pridgeon, to restrain the foreclosure of a mortgage executed by the complainants and their mother, Avaline Hagerman, to Mary Raney, afterwards Mrs. Pridgeon, in September, 1875. In December, 1878, and before her marriage to Pridgeon, Miss Raney executed a will, bequeathing her property to defendant Fred Wigent. The claim of complainants is that during her lifetime Mary Raney Pridgeon frequently expressed the intention of giving the two complainants, who were her nephews, the mortgage, and said that she only expected and only desired to recover interest upon it while she lived; that to effectuate this intention she delivered the mortgage to her husband, Joshua Pridgeon, with instructions to deliver the same to complainants after her death; and that the mortgage was so delivered; but that the defendants, claiming title, commenced proceedings to foreclose by advertisement.

Apart from the controversy upon the question of fact, it is contended by defendants that there was no delivery of the mortgage, and that there was, therefore, no valid gift *inter vivos.* The circuit judge found that the mortgage was delivered to Joshua Pridgeon by deceased with instructions to deliver to complainants as stated. This was a sufficient delivery. *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264; *Foster* v. *Mansfield,* 3 Metc. (Mass.) 412 (37 Am. Dec. 154); *Belden* v. *Carter,* 4 Day, 66 (4 Am. Dec. 185); *Latham* v. *Udell,* 38 Mich. 238; *Brown* v. *Stutson,* 100 Mich. 574.

It is insisted, however, that the testimony of the husband, Joshua Pridgeon, was not competent to show the delivery of the mortgage to him, or the instructions accompanying the delivery of the mortgage to him, as it involved communications made by the wife to the husband during coverture. 3 How. Stat. § 7546, excludes as a witness the husband or wife who is brought as a witness to testify against the other during coverture. *Blanchard* v. *Moors,* 85 Mich. 380; *Berles* v. *Kent Cir-*

*cuit Judge*, 102 Mich. 495. The statute also declares that "neither, during the marriage or afterwards, without the consent of both, shall be examined as to any communication made by one to the other during the marriage." This provision is but declaratory of the common law. The word "communication" must be understood as having been used in the sense which had attached to it by its common use in the same construction. At the common law, testimony of the husband or wife was admissible, after coverture terminated either by divorce or death of the other spouse, in all cases where the facts sought to be proven did not fall within the inhibition against the disclosure of confidential communications between husband and wife made during coverture. Stew. Mar. & Div. §§ 439, 470. In this State it has been frequently held that the surviving husband or wife cannot disclose any communication made during coverture, confidential in its nature, or calculated to reflect upon the character of the deceased. *Maynard* v. *Vinton*, 59 Mich. 151; *Hitchcock* v. *Moore*, 70 Mich. 112; *Carter* v. *Hill*, 81 Mich. 275. The testimony of Pridgeon, it is true, relates to communications by the wife to him, but it is also shown that he was intrusted with the custody of the property, to be delivered after her death, under circumstances which involved an expectation on her part that the communication would be disclosed. It cannot be said to have been confidential. In the early case of *Wells* v. *Tucker*, 3 Bin. 366, a transaction almost identical with that testified to by Pridgeon was testified to by the wife of the intestate, and her evidence was treated as controlling, although the question of its competency was not discussed. In *Mc-Guire* v. *Maloney*, 1 B. Mon. 224, the widow was permitted to testify that she saw her husband execute an instrument, and that her husband handed the same to her at the date of its execution, and that she had since retained it.

In *Caldwell* v. *Stuart*, 2 Bailey, 574, the wife was of-

fered as a witness against the executor of her husband's estate, to prove a parol gift of her husband in his lifetime. The court said:

"The sacredness of the confidence existing in the relation of husband and wife ought never to be violated, unless for the most imperious necessity. But neither the rule nor any of the reasons upon which it proceeds have any—the most remote—application here. The husband is no party. He has ceased to have any interest in temporal concerns. The defendant, the executor, represents the interests of the creditors, legatees, or distributees, as the case may be, and not the husband's. There is no danger of matrimonial discord, nor is there any violation of confidence. She has only disclosed what the husband intended should be known. Without it, his intention in making the gift would have been defeated."

In *Gaskill* v. *King*, 12 Ired. 211, the wife was admitted to testify against the administrator that a deed duly signed was delivered to her for the use of the grantee. It was said: "This communication must, from its nature, have been made to the wife for the express purpose that she should make it known, so as to effectuate the deed." See, also, *Crook* v. *Henry*, 25 Wis. 570; *Hester* v. *Hester*, 4 Dev. 228; *White* v. *Perry*, 14 W. Va. 66; *Stober* v. *McCarter*, 4 Ohio St. 513.

We think it clear, upon the authority of these cases, that the testimony of Joshua Pridgeon was admissible. We find his testimony corroborated to a greater or less degree by the testimony of Mrs. Worden, George Smith, and Henry Auckerman, and are, upon this testimony, satisfied of the substantial truth of complainants' claim. In reaching this conclusion we have not considered the testimony of the wives of the two complainants.

Some criticism is made of the bill of complaint, and it is contended that it is not full enough in its averments to justify the decree which was made. The bill was inartificial, in that it sets out statements of the evidence, rather than the facts deduced from the evidence. But the bill was not demurred to. The defendants answered, and

when, at the hearing, the point was for the first time made, the complainants offered to amend, although no amendment was made in fact. Defendants do not contend that an amendment should not be directed under such circumstances, but do contend that such amendment would not avail complainants, as the case, when stated to correspond with the proofs, would not entitle complainants to relief. Upon that question we have already stated the opinion of the court.

Decree affirmed, with costs.

LONG, GRANT, and HOOKER, JJ., concurred. MC-GRATH, C. J., did not sit.