*In re* MORSE'S ESTATE.

CALDWELL *v.* GOODENOUGH.

1. ESTATES OF DECEDENTS—WITNESSES—STATUTES.

One who claims property of a deceased person by donation *mortis causa* is precluded by the statute from testifying to circumstances occurring at the time of the alleged gift because equally within the knowledge of deceased.

2. APPEAL AND ERROR—BRIEFS—SUPREME COURT PRACTICE.

An exception, not argued in appellant's brief, will be deemed to have been abandoned.

3. GIFTS—SUBJECT OF—CHATTELS—DELIVERY.

Property that may pass by gift *mortis causa* includes not only chattels that may be delivered manually, but also notes bonds, certificates of deposit and other choses in action.

4. SAME.

To constitute a valid gift, it must have been completed at the time it is claimed to have been made, by change of possession or of recognized evidence of ownership with intent to transfer title and dominion over the gift.

5. SAME—BILLS AND NOTES—BANKS AND BANKING.

Delivery of a deposit book or certificate, with intent to donate the fund represented thereby, is a valid gift of the money deposited.

6. SAME—DELIVERY—EXECUTION.

Evidence that the daughter of decedent took sole care of him for many years, showing him much affection and care, that decedent on a previous occasion, thinking he was about to die, gave her his bank book, a certificate of deposit, and pocketbook containing cash, and that subsequently, in anticipation of impending death, directed the daughter again to take possession of the property, and stated to the nurse that he wanted the daughter to have everything, allowing her to retain and exercise control thereover until his death, warrants a verdict for claimant.

Error to Genesee; Wisner, J. Submitted January 8, 1912. (Docket No. 8.) Decided May 3, 1912.

Lucian G. Goodenough presented his final account as executor of the estate of David J. Morse, deceased, to the probate court of Genesee county, and the same was allowed and an order of distribution made. From said order Donna Winifred Caldwell, claimant of a part of the property in said executor's hands, appealed to the circuit court. Judgment for claimant; the executor and distributees of said estate appeal. Affirmed.

*Johnson & Johnson*, for appellants.

*McFarlan & Wilson*, for appellee.

STEERE, J. This action involves the validity of an alleged gift *mortis causa*. Defendant Goodenough is the executor of the last will and testament of David J. Morse, who died at the age of 86 years, at Flint, Mich., in July, 1909. The other parties to this suit are his children. This case was first appealed by claimant from an order of distribution of her father's estate made by the probate court of Genesee county. On the trial of said appeal in the circuit court for said county before a jury, a verdict was rendered and judgment entered in favor of claimant. It was there found that the said David J. Morse made gift to her of a certificate of deposit on the Union Trust & Savings Bank for $219.48, a Genesee County Savings Bank book showing a deposit of $483.88, and a pocketbook containing $11.19. These were claimed to have been given her by the deceased, during his last illness and in anticipation of death. The important question presented by the record in this court is whether there was any testimony to go to the jury on the question of a gift.

During the last 13 years of his life, David J. Morse, deceased, lived with and was cared for by his daughter, Donna W. Caldwell, the claimant, and her husband, Arthur Caldwell, in his home at Flint, Mich. On the 30th day of June, 1899, he made a will in which he bequeathed to the complainant all his household furniture,

a horse, a cow, and other things of a personal nature in and upon the premises owned by him and occupied by them together as a home. He directed that this house and lot should be sold, subject to a mortgage held by Arthur Caldwell and Donna W. Caldwell to secure them for money advanced to pay debts and for his support; that the sum of $276.90, together with interest at 6 per cent., be paid to one Everett Morse to reimburse him for moneys spent for deceased's benefit; and that the residue of the estate, if any, should be divided between his children in certain proportions stated in the will. At the same time this will was made, a contract was executed by which said Arthur Caldwell and Donna Winifred Caldwell were to pay certain of deceased's debts, clothe, board, nurse, and care for him, and were to be reimbursed for all moneys they spent in his care and support, together with interest; the same to be secured by a mortgage on his home. It is the contention of claimant that shortly before his death, and during his last illness, the deceased gave to her the money, certificate of deposit, and bank book referred to, knowing at the time that he was near death.

The complainant, being an interested party, was precluded from testifying to anything which occurred in that connection, for the reason that it was equally within the knowledge of the deceased. The husband of claimant, Arthur Caldwell, was allowed to give testimony in relation to the matter, and this was excepted to on the ground that he also was an interested party by reason of the contract referred to. We are unable to find anything in the evidence which might substantiate a claim that he had any legal interest in this alleged gift. It was a matter entirely distinct and apart from the contract which he and his wife entered into with the deceased, and, so far as the record discloses, was none of his concern except as he might in a general way be interested in the welfare of his wife. As this exception is not argued in appellant's brief, we assume it has been abandoned.

It appears that, when 75 years of age, the deceased suffered an injury by falling from a tree, several bones being broken.  He at that time was somewhat in debt and had no visible means of support except a horse and cow and his home.  His daughter, Donna Winifred Caldwell, the claimant, then took charge of him and nursed him through a serious illness, paying all the expenses, following which, of his own motion, the deceased made his will and had prepared the contract heretofore mentioned, providing for the repayment of the sums which she had actually expended, and for his future care and nursing, and all other actual outlays, which were to be evidenced by receipted bills and paid at his death out of the proceeds of the sale of his home.  Deceased recovered from this serious injury, living over ten years thereafter, residing contentedly with claimant and her husband, who made a home for him, and supported and cared for him, in sickness and health.  During said last 13 years of his life, his daughter ministered to his wants and seems to have furnished him the best of care.  He took pride in telling his neighbors how kind she was to him and how well she cared for him.  Their relations seem to have been friendly and affectionate.  All his wants were supplied by the claimant and her husband  During the remainder of his life, after he had recovered from this serious injury, he was able to work at times and earn small sums of money, which he carefully saved, having no expenses for maintenance and support.  These small earnings accumulated into the fund which is now in litigation.

The will made at the time of his injury conveyed to claimant all his then existing property, and owing to his age and severe injuries it would not be presumed that he would accumulate more.  In March previous to his death, which took place in July, he became ill and was confined to his bed  While so confined, he directed claimant to get and take possession of his bank book, certificate of deposit, and pocketbook.  This she did and showed them to him, and he then, in the presence of her husband,

"told her to be careful how she spent it, as she knew how he had earned it." He recovered from this illness, and the property was returned to him. While, if he had died, this might possibly suggest some question of a gift *mortis causa*, it appears that he partially recovered, and said property was returned to him. It can therefore only be considered for what light it may throw on his acts and words relating to the same subject on a subsequent occasion. The latter part of May he again became dangerously sick, and so remained until his death. During this time he was nursed and cared for by claimant, assisted at different times as he grew worse by two nurses. About a week before his death, he again called up the matter of the bank deposits and pocketbook in the presence of one of the nurses.

Ada Myers, the nurse who was then attending him, testified:

" Mr. Morse was in bed at that time.   *   *   *   He understood it was his last sickness.   *   *   *   He asked for Winnie, and of course when she heard her name mentioned she never waited to be called a second time. She came and stood right at the foot of the bed. He asked her if she had taken care of those things, indicating towards a closet. She said, ' No; but I will,' so she went right into the closet and got a pocketbook.   *   *   *   She came out, took the bank book out from the clock, and she held them up to him, and he nodded his head. He said ' Take care of them.'   *   *   *   He says, ' Take care of those things.' "

Rhoda Brown, the other nurse who assisted in caring for him, describes his parting with his children, bidding them goodbye, and telling them to be good to Winnie (claimant), then calling her and expressing gratitude for her care and kindness, saying she had been a good daughter and never given him a cross word. Witness testifies:

" They went out of the room. He said to me— He started to say something. He hesitated. He said: ' I don't care who knows. I mean for Winnie to have everything.' "

Dr. Rice, his physician, testified to repeated conversations with the deceased in which he spoke of the good care and kindness shown him by claimant, stating that he wanted Winnie to be provided for in return for her care and kindness to him. In one conversation just before his last sickness, he told the doctor that he had a little money saved up that he had earned himself and wished to straighten up all his affairs, "and he made the remark that what he had earned with his own hands (he put up his hands in that way) 'I want Winnie to have.' *  *  * He told me one day he had something in the neighborhood of $600 he had saved." On the trial of this case in the circuit court, the testimony given by Dr. Rice in probate court was read, and is in part as follows:

"David J. Morse, on the 14th of April, 1909, told me he had not—he was very feeble and could hardly get up to the house. Came one morning before I left the house, and told me he didn't have— He wanted to straighten up this bill, as he didn't know when he might drop off. He wanted—he hadn't very much, and what he did have he wanted to leave to Winnie."

Claimant's husband testified that after the death of Mr. Morse he obtained from his wife the bank papers and pocketbook and delivered them to Mr. Goodenough, the executor of the estate, for the purpose of inventory, as advised by his counsel, at the same time stating that they belonged to his wife. Mr. Goodenough, the executor, testified that he did not recollect such a claim being made at the time.

The testimony is undisputed that at the time of the transaction in question the deceased knew death was near and, though feeble, was of sound mind.

At the conclusion of the testimony, a motion was made for the court to direct a verdict in favor of defendant on the ground that there was no evidence in support of the claim of a gift for a jury to consider. This motion was denied. The case was submitted to the jury under a careful charge as to the principles involved. Proper instruc-

tion was given as to the burden of proof and the requisites of a gift in anticipation of death. The paramount issue was stated as follows:

"If you find that David J. Morse in his lifetime said that he intended Winnie, meaning Mrs. Donna Winifred Caldwell, to have the money in the bank, whether in the shape of a bank book or certificate of deposit, and followed this up by directing Winnie to take them into her possession and take care of them, and by directing her to be careful how she spent the money represented thereby, and if you find that he later upon his deathbed redelivered them to her by directing her to remove them from their accustomed place, take charge of them, intending thereby to give them to her, then you will find in favor of Donna Winifred Caldwell. * * * In order for Donna Winifred Caldwell to prove a gift in this case, she must prove; first, absolute delivery of said bank books and money with the intention of parting with the dominion over them by said deceased, and the vesting of the title of said books and money in Donna Winifred Caldwell."

A motion was made for a new trial on the ground that there was no evidence to support the verdict, which was overruled for the reason that in the opinion of the court the evidence did raise an issue of fact to be submitted to the jury.

This case having been tried by a jury, the court is not called upon to weigh the evidence and determine whether a gift as claimed was actually made, but is required to find that there is any competent testimony legally tending to establish the essentials of such a gift.

The general rules of law applicable to cases of this nature are well established by many exhaustive decisions. The only difficulty is in applying those rules to a given case. In its early history the doctrine of *donatio mortis causa* was applied only to chattels passing by manual delivery. It has been extended in later years to notes, bonds, certificates of stock, certificates of deposit, and other choses in action.

To constitute a valid gift, it must be full and complete at the time it is claimed to have been made. Possession.

of the property or the recognized evidence of its ownership carrying title must be given by the donor to the donee, with the intent of the party delivering up such possession to transfer complete ownership by gift to the other party, passing from donor to donee legal title, power, and dominion over the thing intended to be given.

It is well settled that the delivery of a book of deposit in a savings bank or a certificate of deposit, though not indorsed, with intent on the part of the party making the delivery to donate the fund and give the amount of money represented thereby to the donee, is a valid gift of the money deposited. *Tillinghast* v. *Wheaton*, 8 R. I. 536 (5 Am. Rep. 621, 94 Am. Dec. 126); *Camp's Appeal*, 36 Conn. 88 (4 Am. Rep. 39); 20 Cyc. pp. 1238, 1239; *Reed* v. *Whipple*, 140 Mich. 7 (103 N. W. 548); *State Bank of Croswell* v. *Johnson*, 151 Mich. 538 (115 N. W. 464); *Union Trust & Sav. Bank* v. *Tyler*, 161 Mich. 561 (126 N. W. 713, 137 Am. St. Rep. 523).

There is in this case abundance of testimony showing the affection of the father for his daughter, and his gratitude to her for the care and kindness she had shown him in sickness and in health during his declining years, "having never given him a cross word." There is also abundance of testimony tending to show his donative intent as expressed in statements he made to his doctor and nurses. There is evidence that he knew he was about to die; that he was of sound mind though feeble, and of his own initiative, without suggestion from any one, he turned his thoughts to this property, which he had once before, in anticipation of death, turned over to his daughter with the mandate to be careful how she spent it; that he called her to his bedside, directed her to get it, and when she obeyed his instructions and took possession of it, that he enjoined upon her to take care of it. There is evidence he told his nurse that he wanted "Winnie to have everything;" that, having thus transferred possession of the property to his daughter, he thereafter exercised no dominion or control over it, she still retaining it when he died.

The father and daughter, chief parties in this transaction, cannot speak to tell what passed between them. The mouths of both are closed, one by death and one by the law.

The following language in *Love* v. *Francis*, 63 Mich. 181 (29 N. W. 843, 6 Am. St. Rep. 290), seems applicable to this case:

" It requires less positive and unequivocal testimony to establish the delivery of a gift from a father to his children than it does between persons who are not related, and in cases where there is no suggestion of fraud or undue influence very slight evidence will suffice."

There is in this case no evidence of fraud or undue influence. The foregoing was quoted with approval in *Union Trust & Sav. Bank* v. *Tyler*, *supra*, where it was said in relation to a gift from mother to daughter:

" We are, however, of the opinion that, meager as the proof of gift is, it is still sufficient to support the inference drawn by the circuit judge that Esther Hynan, in her lifetime, gave to the defendant Catherine Gordon the bank book evidencing the deposit, with the intention of conferring upon her daughter a present ownership in the fund."

In the case before us, we think, in the absence of fraud or undue influence, and in view of the proved affectionate relations between the father and daughter, together with his expressions of gratitude for her kindness to him during many years, that, meager as the proof of gift is, there was sufficient to submit to the jury. If so, it was for them, and not the court, to weigh the testimony and draw from the facts proven such inferences as in their discretion they deemed just and proper.

The judgment is affirmed.

MOORE, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.