PRICE *v.* HAGLE.

1. DEEDS—DELIVERY—GIFT.
    The mere fact that a decedent so disposed of her property by deed as to do an injustice to one of her daughters will not nullify the transaction.

2. SAME—COMPETENCY—EVIDENCE OF DELIVERY.
    Evidence examined and *held* to show that decedent was compe-

tent to execute and deliver a deed of real property and that
delivery was made.

3. EVIDENCE—PRIVILEGED COMMUNICATIONS.
   Letters from decedent's agent to her legal adviser, bearing
   upon the delivery of the instrument, were not privileged or
   incompetent.

Appeal from Oakland; Smith, J.   Submitted April 12,
1912.   (Docket No. 91.)   Decided July 22, 1912.

Bill by Ella Z. Price against Thankful C. Hagle and
another for the cancellation of a deed of conveyance.
From a decree for complainant, defendants appeal.  Re-
versed.

*Aaron Perry (George O. Kinsman,* of counsel), for
complainant.

*B. F. Reed (Pelton & McGee,* of counsel), for defend-
ants.

BROOKE, J.   The bill of complaint in this cause is filed
to set aside a deed purporting to convey to defendants two
houses and lots in the village of Oxford, Oakland county.
The deed was made by Fanny M. Titsworth, and bears
date November 24, 1906.   It was drawn by one Adam
Bennett, who is the husband of a niece of Mrs. Titsworth.
At the time of its execution, Mrs. Titsworth left the deed
with Mr. Bennett, saying she might call for it or might
not.   As a matter of fact, she did call for it about a year
later.   Mrs. Titsworth, the grantor in the deed in ques-
tion, was the mother of both the complainant and defend-
ant Thankful C. Hagle.   The other defendant is the
daughter of Thankful C. Hagle.   Mrs. Titsworth died
April 4, 1910, being at that time 74 years of age.   The
deed in question was recorded 10 days later, on April 14,
1910.

It appears that Mrs. Titsworth was first married to a
man named Dove.   Dove died in 1879, and thereafter, un-
til her marriage to Titsworth in 1891, she was in receipt

of a pension. Titsworth having died in 1895, Mrs. Titsworth seems to have conceived the idea later of securing a renewal of her pension, and it is the claim of complainant, supported by proof more or less cogent, that the deed in question was executed so that Mrs. Titsworth could make an affidavit "that she was without means of support other than her daily labor and the actual net income not exceeding $250 per year." This affidavit bears date December 7, 1906, about two weeks later than the deed in question. Another affidavit in the pension matter apparently bearing date December 10, 1906, states:

" That my real estate consists of three acres of land and two vacant lots and that was the only real estate I own or did own the 10th of Dec. 1906," etc.

As the result of her application, Mrs. Titsworth was restored to the pension rolls on October 7, 1907, the order taking effect December, 1906. The record shows, further, that Mrs. Titsworth had inherited considerable property from each of her husbands, and that she had been in business herself. Her younger daughter (defendant Thankful) is the wife of Mark Lee Hagle, who, prior to October, 1909, was interested in several small country banks. It is clear that in some way he induced Mrs. Titsworth to convert considerable of her property into cash, which he deposited, to the amount of at least $3,600, in one of his banking concerns, issuing therefor certificates of deposit payable to the order of Mrs. Titsworth or Thankful Hagle. His enterprises proved unsuccessful, and he absconded on October 15, 1909. Later he was apprehended, brought back to Michigan, was tried, convicted, and sentenced to a term of imprisonment. It seems to be undisputed that, after Mrs. Titsworth took the deed from Bennett, she kept it with her other papers in a safe in her house in Oxford. This safe was never locked, and defendant Thankful C. Hagle had access to it.

The evidence of Benjamin F. Reed, a lawyer residing at Lapeer, a few miles from Oxford, shows that he re-

ceived the deed in an envelope addressed to him by Thankful C. Hagle on October 21 or 22, 1909. He further testified that he had an interview with Mrs. Titsworth on March 25, 1910, 10 days before her death, at which interview he exhibited the deed to her; that she then told him she had delivered it to defendant Thankful C. Hagle shortly after Lee Hagle went away; that she gave it to Mrs. Hagle because it was hers; that Mrs. Hagle had not recorded it fearing that Orin Price (complainant's husband) would make trouble. This interview was brought about through two letters written to Reed by William Cleaver at the request of Mrs. Titsworth. The letters follow:

"February 20, 1910.

"ATTORNEY BEN F. REED,
          "Lapeer, Michigan.
"Dear Sir:
   "Mrs. Dove, later Mrs. Titsworth, Lee Hagle's mother-in-law, wishes me to write to you and ask you to write her and tell her if you have the deed she made about six years ago, of the houses she owns in Oxford, to Mrs. Hagle and her daughter Letha, to go to them at Mrs. Dove's death. She, that is Mrs. Dove, left them in your care and keeping. Mrs. Dove would like to have you examine then and see if they are made out legally and correct as her other son-in-law is worrying her about them, and she is afraid he will make Mrs. Hagle trouble when she, Mrs. Dove, dies, if there is the least chance for him to do so. Mrs. Dove says tell you she wants Mrs. Hagle and Mrs. Hagle's daughter to have the property at Mrs. Dove's death. If you wish to explain it with her in any particular, do so and I will likely be able to tell her so she will understand it. I often do a little writing for her as since she had a stroke she cannot write much.
          "Yours respectfully,
                    "WILLIAM CLEAVER,
                              "Oxford, Mich."

"March 1, 1910.

"Mr. B. F. REED, Attorney,
          "Lapeer, Michigan.
"Dear Sir:
   "Mrs. Fannie Titsworth of Oxford asks me to write to

you, again asking you to make another look for the deed
of those two houses in Oxford which she deeded to her
daughter Mrs. Hagle, as Mrs. Hagle tells her she is sure
the deeds were left with you since Lee Hagle left Oxford.
She wants me to ask you to answer by return mail so if
they are lost she can duplicate them.

                  "Respectfully,

                  "WILLIAM CLEAVER,

                      "Oxford, Mich."

    This witness expressed the opinion that on the day of his
interview with Mrs. Titsworth she was perfectly compe-
tent.

    The record is very voluminous, and much testimony
was introduced upon each side with reference to declara-
tions said to have been made by the decedent as to how
she intended to dispose of her property. One set of wit-
nesses declare that she defined her purpose to be to leave
one of the houses in question to her daughter Mrs. Price,
and the other to her daughter Mrs. Hagle, while those
upon the other side say that she frequently declared that
both houses should go to her daughter Mrs. Hagle and
Mrs. Hagle's daughter, Letha. Taking into considera-
tion what the decedent actually did, we think that these
random declarations made in ordinary social conversa-
tions should not be given too much weight. Much testi-
mony was introduced upon each side touching the mental
condition of the decedent at the time the deed in question
is said to have been delivered. To review this testimony
at large would be fruitless from any point of view. It is
sufficient to say that in our opinion the record establishes
beyond any reasonable doubt the fact that Mrs. Titsworth
retained her mental faculties to an unusual degree up to
the day of her death. We do not overlook the fact that
in April, 1908, she suffered from a severe attack of hem-
orrhage of the nose, which was controlled with much dif-
ficulty, and was temporarily followed by a slight paraly-
sis of the tongue, and some mental confusion. Follow-
ing this illness, many witnesses testify positively to the

fact that decedent was in full possession of her mental faculties.

The learned circuit judge who heard the testimony filed the following opinion:

"Observation and experience convince me that some women of advanced age and ill health, who talk intelligently upon ordinary topics and everyday affairs, are mentally incompetent to wisely manage their property or make a rational disposition of it. In such cases they are prone to favoritism and to unduly reward those with whom they are in daily contact. They are readily influenced. Their sympathies are easily aroused. One or all of these factors control their actions in making disposition of property. I fully believe Mrs. Titsworth belonged to this class at the time the deed is question is alleged to have been delivered. A considerable number of truthful witnesses have described her as intelligently conversing upon casual and ordinary subjects before and after this date, and even about simple business matters. These express the opinion she was mentally competent. But upon the subject of the disposition of the two houses involved in this suit, equally truthful witnesses describe the vacillation of her mind. She seems never to have had any definite idea about them. To one visitor she would say she built one for each daughter. To the next one she would be equally as positive that the daughter Mrs. Hagle would have both. She really never formed any rational judgment about their final disposition. Finally, her sympathy went out to Mrs. Hagle because of her husband's troubles, and, if the deed was formally and legally delivered as alleged by defendant (a matter concerning which no opinion is expressed), it was the result of this sympathy, and her weakness of mind. It was originally not made for delivery to anybody, but secretly to enable her to secure a pension to which by law she was not entitled. It is due her memory to say she probably did not originate this plan of securing the government's money. Its use seems to me inequitable also, for no good reason appears why she should have discriminated against the elder daughter. I think the deed should be set aside and with costs. It is so held in this court."

From this it is evident that the court below was of opinion that the decedent at the time of the claimed delivery

of the deed was not possessed of mental strength sufficient to give legal effect to the act if performed. In this view, as above indicated, we cannot concur.

The mere fact that the disposition of the estate of Mrs. Titsworth so brought about results in an apparent injustice to the complainant is not sufficient to nullify the transaction. Courts are not permitted to make equitable disposition of estates, but are concerned only in giving effect to the legal acts of testators. *Reichert* v. *Reichert*, 144 Mich. 295 (107 N. W. 1057). See, also, *Terry* v. *Terry*, 170 Mich. 330 (136 N. W. 448), decided at the last term of this court. The alleged absorption and dissipation of the great bulk of Mrs. Titsworth's estate by her son-in-law Hagle only serves to emphasize the unfairness of the old lady in enriching his wife at the expense of her other daughter, the complainant. Indeed, his reprehensible action followed by his imprisonment, and the consequent withdrawal of his protection and support from his family, may well have furnished to the decedent the motive for her action if she actually delivered the deed to Mrs. Hagle as claimed. Although Mrs. Titsworth's primary purpose in executing the deed was probably foreign to her intent as expressed in the instrument itself, yet we think that the fact of its execution at a time when no question is made as to her mental capacity is significant. It is clear that a deed making her two daughters (complainant and defendant Thankful) grantees would have accomplished her purpose quite as effectually as one in which the defendants were made grantees, yet she seems deliberately to have chosen to make her daughter Thankful and her granddaughter Letha such grantees. This fact does not, of course, show any intention on her part to make a delivery of the deed, and thus irrevocably divest herself of the title, but it has, we think, a legitimate bearing upon her ultimate purpose.

If the testimony of B. F. Reed is admissible, and credible, the question of delivery is at once set at rest. It is strenuously urged on the part of the complainant that this

testimony should not be considered, for the reason that at the time of his alleged interview with the decedent the relation of attorney and client existed between himself and Mrs. Titsworth, and the communications then made were therefore privileged.

The peculiar circumstances surrounding this case, where one heir consents to waive the privilege, if one existed, and the other declines to waive and insists upon the privilege, raises an interesting question which has been carefully briefed by counsel for both parties. As the record stands, however, we find it unnecessary to consider the question. We think there is ample evidence outside that of Mr. Reed to support the conclusion that the decedent delivered the deed in question to Mrs. Hagle, intending thereby to clothe the grantees therein named with a beneficial interest in the property according to the tenor of the deed. That testimony will be found in part in the two letters from William Cleaver to Reed, which appear, *supra*, and in the oral testimony of Cleaver and his wife. These two witnesses are without interest in this controversy, and are in no way discredited. If their testimony is true, there can be no doubt that Mrs. Titsworth not only delivered the deed as claimed, but was extremely anxious that no mischance should be permitted to rob that delivery of its legal effect.

It is urged that Cleaver's letters to Reed are likewise privileged and inadmissible. We think they are clearly admissible, and that they afford the best possible evidence; they are, in fact, declarations of Mrs. Titsworth made through her agent, Cleaver. An effort is made on the part of the complainant to establish the fact that between the 15th and 22d of October, 1909 (when the delivery is said to have been made), no opportunity for such delivery occurred. While the testimony upon this point is voluminous and persuasive, we are bound to say, in the light of subsequent events, that it is far from conclusive. Upon a careful review of the record, we feel constrained to hold that Mrs. Titsworth possessed the necessary mental vigor

to make a valid delivery of the deed in question, and that she did so deliver it at or about the time claimed.

The decree of the circuit court is reversed, and a decree will be entered in this court dismissing the bill of complaint, with costs of both courts.

MOORE, C. J., and STEERE, MCALVAY, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.