STATE BANK OF CROSWELL v. JOHNSON.

1. GIFTS—NATURE.

Where, during his last illness, the payee of a certificate of deposit indorsed thereon a direction to the bank to issue a new certificate payable to himself and another or the survivor of them, and delivered it to the other person named, with the intent that the right to the entire fund should become absolute and irrevocable in the donee only in case of his death, but that in the event of his recovery such person should have an equal interest with him, the transaction partook of the nature of both a gift inter vivos and a gift causa mortis.

2. SAME—DELIVERY—NECESSITY.

To sustain a gift either inter vivos or causa mortis, there must be a delivery, actual or constructive, and the donor must part with his dominion over the property so that no further act is required of him to vest the title in the donee.

3. SAME—DELIVERY—SUFFICIENCY—CERTIFICATE OF DEPOSIT.

The indorsement of the certificate of deposit and the delivery thereof to the donee with intent to make the gift as specified in the indorsement was as effective to pass the title to the interest specified as though a new certificate had been issued to the donee as directed by the indorsement.

4. SAME—JOINT TENANTS—SURVIVORSHIP—PERSONAL PROPERTY.

The rule that the law of survivorship does not apply in the case of joint ownership of personal property does not affect the right of a donor to make a gift to his surviving wife.

Appeal from Sanilac; Beach, J. Submitted January 15, 1908. (Docket No. 53.) Decided March 17, 1908.

Bill of interpleader by the State Bank of Croswell against Samuel Johnson, administrator of the estate of Thomas Parker, deceased, and Alice Parker, to determine the title to a certificate of deposit. From a decree for defendant Johnson, defendant Parker appeals. Reversed, and decree entered for appellant.

*Wilford Macklem* (*Thomas Wellman,* of counsel), for appellant.

*C. F. Gates,* for appellee.

BLAIR, J.   The complainant bank filed a bill of interpleader for the purpose of determining the ownership of a fund which it had on deposit, which was claimed by the defendant Johnson, as administrator of the estate of Thomas Parker, deceased, as belonging to his estate, and by the defendant Alice Parker, widow of Thomas Parker, by virtue of the transfer to her, by indorsement, of the following certificate of deposit, on the 11th day of December, 1906, viz. :

"STATE BANK OF CROSWELL.   No. 17820.   $1800.00.
                    "CROSWELL, MICH., July 3, 1906.
  "Thomas Parker has deposited in this bank eighteen hundred dollars, payable to the order of himself July 3, 1907, on return of this certificate, properly indorsed, with 5 per cent. interest per annum for all full months, if left twelve months.   Interest will stop one year from date unless renewed.
                    "F. J. BATTERSBEE, Cashier."

The certificate was indorsed, as follows:

" F. J. BATTERSBEE,
        "Cashier of the State Bank of Croswell.
  " Issue a new certificate in place of this one and make said certificate payable to Thomas Parker and Alice Parker or the survivor of them.

                                his
                        "THOMAS .x PARKER."
                                mark

The indorsement was written on the certificate of deposit by Mr. Battersbee, cashier of the State Bank of Croswell, at Mrs. Parker's request.

"Mrs. Parker came over one day to Croswell and wanted me to fix up that matter, said Mr. Parker was very sick and wanted me to come out.   *   *   *   I said I can fix the matter so it will do just as well as my going. I asked her the condition of Mr. Parker and she told me,

said he was very sick. I asked her if the doctor was satisfied he was in a condition to do business and she said she thought he was; I wrote this and told her to get the doctor as one witness, if he would act as a witness I would feel confident he was in a condition to do business. I told her to have two witnesses and told her to send it or bring it back to me."

Mr. Batterbee's impression was that after writing the indorsement he put the certificate of deposit in a safety deposit box rented by Mr. Parker and gave the box and keys to Mrs. Parker.

"*Q.* When did you get the box back?

"*A.* I don't know whether it was the next day or two days after I was in the postoffice and I saw a package lying on top of my desk there. * * *

"*A.* Yes, and I carried it to the bank and saw it was Mr. Parker's. I said to the assistant cashier, 'Our box is back.' * * * I am not sure whether it was before or after his death that I got it. He died I think a couple of days after this. * * *

"*Q.* The box was locked?

"*A.* Yes.

"*Q.* When did you open the box?

"*A.* When Mrs. Parker came over.

"*Q.* How long after you got the box?

"*A.* I don't know, she came over shortly after Mr. Parker's death, probably the next day."

Dr. Fraser, who was Mr. Parker's attending physician, testified with reference to the signing of the indorsement by Mr. Parker, as follows:

"On the day before the certificate was signed, Mrs. Parker came to the office for some medicine for her husband and asked me if the next time I came to the house I would put a fountain pen in my pocket as Mr. Parker would like me to do a little writing for him and I said I would, and I did. When I got to the house that afternoon, he said, speaking to me, that Alice wanted me to do some writing, he didn't know what it was but he guessed it was all right and I said to him, whether he knew or not that he would know before he got through, as I wouldn't be a party to anything else. She was coming into the room with this certificate in her hand at the

time Mr. Parker spoke to me, and she handed it to me.    I
read the certificate and the indorsement on the back and
I said to Mr. Parker, 'This is a certificate of deposit of
the State Bank of Croswell for $1,800 and indorsed on the
back is the following,' and I read the indorsement on the
back.   And he said, 'That's all right, Doctor, it is her
money and I want her to have it; the certificate should
have been made out that way in the first place and I told
Mr. Battersbee to make it out, and always supposed it was
made out payable to Thomas Parker and Alice Parker or
the survivor of either of them.   I supposed it was until a
day or two; that's the way I wanted it made out.'   I said,
'That's all right.'   Then I signed the paper and witnessed
it.     *     *     *

" *Q.* After that what did he say about whom to give it
to ?

"*A.* To the best of my recollection, he handed the pa-
per back to Mrs. Parker.

" *Q.* Thomas Parker?

"*A.* Thomas Parker handed it to Mrs. Parker.    *   *   *

" *Q.* What did he say about whom he wanted it to go
to ?

"*A.* He said, 'That's right, that's as it should be,' it is
hers and I want her to have it.'   As I said, he said he
was under the impression that the original certificate had
been made out that way to the joint names."

The trial judge, after hearing the proofs, found that the
fund in question was part of the assets of the estate of
Thomas Parker, to which the administrator was entitled,
and decreed that the money which the complainant had
paid into court be paid by the register to defendant John-
son.   From this decree, defendant Alice Parker appeals
to this court.

Counsel for appellant present in their briefs, among
others, the following proposition, which is the only one
which we find it necessary to consider:

1. That a valid donatio causa mortis to appellant was
shown.   We are of the opinion that the transaction above
set forth partook of the nature both of a gift inter vivos
and of a gift causa mortis.   The donor intended that the
right to the entire fund should become absolute and irrev-
ocable in the donee only in case of his death, but that in

the event of his recovery, she should have an equal interest with him. . In either case, there must be a delivery, actual or constructive, and the donor must part with his dominion over the property so that no further act is required of him to vest the title in the donee. 20 Cyc. pp. 1231, 1232; *Chaddock* v. *Chaddock*, 134 Mich. 48.

The important question, therefore, for our determination, is whether this record discloses such a delivery and parting with the jus disponendi. In determining this question, it is essential to bear in mind that Mr. Parker, although a shrewd man, was unable to read and write, and could, therefore, only know the contents of his certificate of deposit through information from others. It appears from his statement, which is wholly undisputed, that he had supposed "until a day or two" that the certificate "was made out payable to Thomas Parker and Alice Parker or the survivor." It is manifest, therefore, that he intended to give her a present interest in this fund equal to his own, and that, in the event of his death, which he must have anticipated and which actually occurred on the second day after, to give her the entire fund. He did all that he could to carry out his intention and the question is, Did he go beyond an intention to make the gift? We are of the opinion that this question must be answered in the affirmative.

In the case of *Reed* v. *Whipple*, 140 Mich. 7, Peter W. Reed, on the 8th day of May, 1898, the day before his death, directed one Hannah Waters to procure for him from his safe two certificates of deposit and a bank book representing a savings deposit, which she procured and handed to him as directed. Immediately upon receiving them, he indorsed the certificates in blank and wrote the following on the back of the savings bank book:

"JOHN PORTER: Please assign the amount of this book to Miss Hannah Waters.

                              "P. W. REED."

Mr. Porter was the cashier of the bank. After indors-

ing the certificates and writing the words above quoted on the savings bank book, Mr. Reed delivered the certificates and bank book to Hannah Waters and said:

"This is all the money I have. I don't think I can get better. If I do, I want you to give them back; if I do not, they are yours. Take them down to the bank in the morning and have them renewed to you. I want you to take them and take care of yourself and the baby, and if I get better, I want you to transfer them back to me."

Neither the certificates of deposit nor the bank book were presented until long after the death of Mr. Reed. It was held that the transaction constituted a valid gift causa mortis and the estate of Peter W. Reed had no interest in the fund.

The ground of the holding in *Reed* v. *Whipple* is that the delivery of the savings bank book with the writing thereon was, in effect, a delivery of the fund itself. As said in *Wetherow* v. *Lord*, 41 App. Div. (N. Y.) 413:

"The contract which is created between a depositor and a savings bank is quite different from a contract between a depositor and a bank of deposit. In the former case the book evidences the contract, and the bank is not compelled to pay the depositor except upon presentation of the book. * * * It is, therefore, evident that the unqualified delivery of a book of deposit in a savings bank, with intent on the part of the person making the delivery to give an amount of money to the donee, is sufficient to vest in the donee absolute title to the money represented by the book."

The same rule and for the same reasons applies to certificates of deposit, and the delivery of such a certificate, with intent to donate the fund, even though not indorsed, is a valid gift of the money deposited. 20 Cyc. p. 1230, and notes.

By delivering the certificate to his wife with the intention of giving her the entire fund in the event of his death, Mr. Parker lost control of the fund, parted with the right to dispose of it evidenced by the certificate, and the gift causa mortis was complete, subject only to revocation by

his recovery. *Reed* v. *Whipple,* supra; *Whalan* v. *Milholland,* 89 Md. 199 (44 L. R. A. 208); *Wilcox* v. *Murtha,* 41 App. Div. (N. Y.) 408; *Green* v. *Langdon,* 28 Mich. 221; *Driscoll* v. *Driscoll,* 143 Cal. 528; *Fischer* v. *Union Trust Co.,* 138 Mich. 612 (68 L. R. A. 987); *Ellis* v. *Secor,* 31 Mich. 185; *Love* v. *Francis,* 63 Mich. 181.

Even if he had recovered, Mr. Parker could not have disposed of his wife's interest in the fund without her consent. *Kaufman* v. *State Savings Bank,* ante, 65.

The indorsement of the certificate which represented the fund and the delivery thereof with intent to make a gift as specified in the indorsement was as effective to pass the title to the interest specified as though a new certificate had been issued to Mrs. Parker as directed.

Our decisions that the law of survivorship does not apply in the case of joint ownership of personal property does not affect the right of a donor to make a gift to his surviving wife.

In *Wait* v. *Bovee,* 35 Mich. 425, where the doctrine was announced, it was said:

"There is no question on evidence as to whether there was a gift by the husband to the wife, or a contingent relinquishment of right by one to the other; the case fairly excludes all considerations of that kind."

In the *Matter of Albrecht,* 136 N. Y. 91 (18 L. R. A. 329), it is said, among other things:

"We are aware that there are many authorities holding that where the husband purchases a security or makes a deposit, or subscribes for stock in the joint name of himself and wife and pays therefor with his own funds, upon his death the entire security belongs to the wife, if she survives him. But the decision in all these cases is put upon the ground that it is apparent from the character of the transaction that the husband intended to give the property to his wife in the event of her survivorship and, hence, the transfer possesses all the essential qualities of a gift causa mortis, which he may revoke in his

lifetime, and which does not take effect until his death, if not previously recalled."

It results that the decree must be reversed, and a decree entered in accordance with this opinion, with costs to be paid out of the estate.

GRANT, C. J., and MOORE, CARPENTER, and MCALVAY, JJ., concurred.