NEGAUNEE NATIONAL BANK *v.* LE BEAU.

1. GIFTS—INTER VIVOS—MONEY IN BANK—JOINT DEPOSIT.
     Where a father deposited money in a bank and a certificate was · indorsed upon the ledger sheet of the bank stating that the sum deposited to the account belonged to the father and daughter jointly, and that it was understood that each might withdraw on his or her individual order during their joint lives, and that any balance remaining upon the death of either should go to the survivor, and signed by both, a gift *inter vivos* of the property of the father, and not a testamentary disposition thereof, was created, and it is immaterial that the father retained the passbook in his possession.[1]

---

[1]On deposit in joint names as gift to codepositor, see note in 12 L. R. A. (N. S.) 355.

On effect of delivery of order for savings account without the book to complete a gift of the account, see note in 22 L. R. A. (N. S.) 568, L. R. A. 1915B, 396.

2. CONSTITUTIONAL LAW—STATUTES.
    The constitutionality of an act will not be considered
    where a decision of the case can be reached on other
    grounds.

Appeal from Marquette; Flannigan, J.    Submitted
January 11, 1917.    (Docket No. 171.)    Decided March
30, 1917.

Bill of interpleader by the Negaunee National Bank
against Edward Le Beau, administrator of the estate
of Euchrist Le Beau, deceased, and Sophia Charles
for a decree determining the title to certain money.
From a decree for defendant Charles, defendant Le
Beau appeals.    Affirmed.

*J. M. Edgerton,* for appellant.

*J. H. Primeau, Jr.* (*E. A. McDonald,* of counsel),
for appellee.

A fund being on deposit in plaintiff bank at the
death of Euchrist Le Beau and said sum having been
claimed by Sophia Charles, daughter of said deceased,
and by his administrator, the plaintiff bank filed a
bill of interpleader.    The issue was framed through
the filing of separate answers by the defendants.    De-
fendant Edward Le Beau asserted title to the fund
as the administrator of his father, Euchrist Le Beau,
it being his claim that at the time of the death of his
father said fund was a part of his father's estate.
Defendant Sophia Charles claimed said fund by vir-
tue of a certificate indorsed upon the ledger sheet of
the plaintiff bank on which said account was entered
as follows:

"The sum deposited to this account belongs to
            Signature:    "EUCHRIST LE BEAU,
                        "SOPHIA CHARLES,
jointly; it being understood each may withdraw on
his or her individual order during their joint lives,

and that any balance upon the death of either shall belong to the survivor.

[Signed]  "Euchrist Le Beau.
[Signed]  "Mrs. Ed. Charles."

The money in dispute, now amounting with interest to upwards of $2,000, was deposited in the plaintiff bank under the following circumstances: In the fall of 1909, Euchrist Le Beau and his wife were both upwards of 70 years of age. The wife and mother having met with an accident, it was found necessary or advisable to have one or other of her daughters with her. The defendant Sophia Charles left her home in Minnesota, and in August, 1909, came to her mother's home in Negaunee, where she remained until after her mother's death, which occurred in January, 1910. Subsequent to that date she continued to reside with her father, giving him such care and attention as was necessary until June, 1910. On June 6th, June 20th, and June 22d, the deposits in question in this case were made. Prior to that Euchrist Le Beau had kept his money in other banks. Shortly after said deposit was made Euchrist Le Beau went for a visit to Canada and placed his bank book and other papers with one Joseph Barabe, who testified upon direct examination as follows:

"He told me he was going to Canada, and in case anything should happen to him, to turn this package of papers over to Mrs. Sophia Charles, his daughter."

Touching the transaction, the vice president of the plaintiff bank gave the following testimony:

"*Q.* Please state just what that transaction was?
"*A.* Mr. Le Beau brought some money, and he said he was— * * * Mr. Le Beau told me that he wanted to bring some money there because he knew I would pay it out as he wished to have it paid. I said, 'Yes, we will do that.' And he said he wanted to give that money to his daughter Mrs. Charles, after he died, and I told him he couldn't do that; I told him

that if he wanted to give it to Mrs. Charles he would have to give it to her now. 'You can't give it to her after you're dead.' He says, 'Well, I will give it to her now.' I said, 'All right; if you do, then she can come here tomorrow and take the money; she can come tomorrow and take the money, or you can come and take it. That is the only way you can give it to her.' And he said, 'That is what I want to do.'

"*Q.* Is that what he did?

"*A.* That is what he did.  *  *  *

"*Q.* Did you tell Mr. Le Beau that you would pay to the survivor in this case?

"*A.* I told him—not in those words—I told him it was hers right there and then, and she could come the next day and get it, and, of course, she could get it after he was dead, if she could get it when he was living.  *  *  *

"*Q.* Did Mr. Le Beau say why he was giving this to his daughter?

"*A.* Because she had done more for him than the rest, and that is why he wanted to give her this money."

Among the rules and regulations of the savings department of the plaintiff bank, printed in the passbook, was the following:

"5. No checks will be cashed or deposits received in this savings department unless accompanied with the depositor's passbook."

Upon cross-examination this witness testified:

"*Q.* I understand that Mr. Le Beau came to you and wanted to have it arranged so that Mrs. Charles could have this money when he died?

"*A.* Yes, sir.

"*Q.* And you told him that that could not be done unless he would put it into this form of account?

"*A.* I told him he could not give it to her after his death; I told him he had to give it to her right there and then, if he wanted to give it to her; it could not be done after his death; because after his death it became a part of his estate, the minute he died.

"*Q.* So he said he would put the account in that form?

"*A.* Yes; that is what he wanted to do. I told him, 'She can come tomorrow and take the money and you won't have a word to say.' And he said, 'That is what I want; that is all right.'

"*Q.* In saying that she could come tomorrow and take the money, did you say anything more to him as to whether or not the money would all belong to her or not?

"*A.* No; I didn't explain any more than that; I thought that covered it."

With reference to the rule touching the production of the bank book he further testified:

"*Q.* Have you a rule of your bank in regard to producing the bank passbook in drawing out on a savings account?

"*A.* Yes, sir; it is on the rules here that they should bring the passbook every time they make a deposit or a withdrawal. Still we don't insist upon it; there are times when they take money out without the passbook, or put it in."

In October, 1910, Euchrist Le Beau fell ill, and he directed his daughter Mrs. Harry Siegel to send for his daughter the defendant Mrs. Sophia Charles, which was done.. She arrived on October 15th, and became possessed of the passbook shortly after her arrival. Euchrist Le Beau died October 26, 1910. A decree having been entered in favor of the defendant Sophia Charles, the defendant administrator of Euchrist Le Beau appeals.

BROOKE, J. (*after stating the facts*). It is the position of the appellant that the provision in the certificate indorsed on the ledger account and signed by the parties, to the effect that the money remaining in the account at the death of either shall belong to the survivor, is testamentary in character, and therefore void, citing *Union Trust & Savings Bank* v. *Tyler,* 161 Mich. 561 (126 N. W. 713, 137 Am. St. Rep. 523) ; *State Bank of Croswell* v. *Johnson,* 151 Mich. 538

(115 N. W. 464). In the latter case the fund in question was represented by a certificate of deposit which bore the following indorsement placed there by an officer of the bank:

"F. J. Battersbee, Cashier of the State Bank of Croswell: Issue a new certificate in place of this one and make said certificate payable to Thomas Parker and Alice Parker or the survivor of them.

his<br>
"THOMAS X PARKER."<br>
mark

This certificate was then placed in a safety deposit box rented by Mr. Parker and the box and keys were given to Mrs. Parker. It was held in this court that Mrs. Parker was the owner of the fund because of the fact that Thomas Parker—

"intended to give her a present interest in this fund equal to his own, and that, in the event of his death, which he must have anticipated and which actually occurred on the second day after, to give her the entire fund. He did all that he could to carry out his intention and the question is, Did he go beyond an intention to make the gift? We are of the opinion that this question must be answered in the affirmative."

In the case of the *Union Trust & Savings Bank* v. *Tyler, supra,* an officer of the bank at the request of the owner of the fund indorsed upon the book the following words:

"In the event of her death, this account is payable to her daughter, Catherine Gordon."

We there held that the words indorsed upon the book were clearly testamentary in character, and therefore inoperative to convey an interest in the fund, but the donee took the fund by reason of the introduction of evidence which tended to support the inference that the donor had given to her daughter the book itself representing the deposit prior to her death.

The case at bar, in our opinion, presents a situation quite different from either of those considered. Here the deposit was made under a certificate declaring the deposit to belong jointly to Euchrist Le Beau and Sophia Charles. The writing itself, quite apart from the testimony of the vice president of the bank, indicates on the part of Euchrist Le Beau the intention to create in his daughter Sophia Charles a present estate in the fund, equal to his own, together with the sole right to said fund in case of his death. This writing, therefore, does not constitute a testamentary disposition of the property of Euchrist Le Beau, but plainly amounts to a gift *inter vivos*. It is said on behalf of appellant that Euchrist Le Beau retained control over the fund by retaining possession of the passbook representing it. It is clear that he retained no more control over the fund than did his daughter, Sophia Charles. Under the form of the deposit, with or without the passbook representing the same, either could have withdrawn the entire amount during the lifetime of the other. In this case it is not necessary to predicate determination upon the fact that the passbook prior to the death of Euchrist Le Beau was in the possession of the donee, and to draw an inference from that possession that the same was given to her by her father in his lifetime with the intention of giving her the fund represented thereby. He had already given her the fund by his unequivocal act at the moment the deposit was made. Appellee relies upon the provision of Act No. 248, Pub. Acts 1909, section 3 of which (2 Comp. Laws 1915, § 8040) provides:

"When a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property

of such person as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment and the receipt of acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof."

It is asserted by appellant that said statute, if applicable, is unconstitutional for various reasons assigned. Without casting any doubt upon the validity of the legislation in question, and following our usual practice, we decline to consider this phase of the question, being able to reach a determination of the issue involved upon other grounds.

The decree of the court below is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.