JACKMAN *v.* JACKMAN.

1. GIFTS—DELIVERY—INTENT TO PASS TITLE.
   In order to make a valid gift there must be an absolute delivery, according to the nature of the subject-matter, with the intention of making a gift and passing title.

2. SAME—CHOSES IN ACTION—ASSIGNMENTS—DELIVERY.
   Delivery of written assignment of chose in action is a good delivery of the chose in action and is sufficient to support a gift.

3. SAME—DELIVERY—POSSESSION—RESERVATION OF INCOME.
   Although delivery is essential to perfect a gift, neither donor's retention of possession for any purpose, his subsequent possession, nor his reservation of income from the subject-matter of the gift is necessarily incompatible with the donee's dominion over the property, if satisfactorily explained.

4. SAME—JOINT CONTROL—RESERVATION OF INCOME—DELIVERY.
   Joint control by donor and donee of safety deposit box containing assignments of mortgages by father to one of his two sons, his sole heirs, and possibility that donor had reserved to himself the income from the mortgages of which assignments had been delivered to donee, held, insufficient to divest donee of title he had acquired by assignment.

5. SAME—EQUITY—ESTATES OF DECEDENTS.
   Fact that father's gift of assignments of mortgages to one of his two sons, his sole heirs, may result in seemingly unfair division of property held, insufficient to affect donee's title, since courts are not permitted to make equitable distribution of estates, under such circumstances, but are concerned only in giving effect to legal acts of decedents.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 2, 1935. (Docket No. 33, Calendar No. 38,306.) Decided May 17, 1935.

Bill by William Jackman against Howard Jackman, individually and as administrator of the estate of John Jackman, deceased, to set aside certain assignments and for other relief. Decree for defendant. Plaintiff appeals. Affirmed.

*Glocheski & Glocheski,* for plaintiff.

*Hilding & Baker* (*Edward H. Benson,* of counsel), for defendant.

NELSON SHARPE, J.   The opinion filed by the trial court so clearly states the facts here presented, and the law applicable thereto, that we adopt it as that of this court:

"Plaintiff and defendant are brothers, the sons and sole heirs of John Jackman, who died on the 14th day of October, 1933.   For some time prior to his death John Jackman had been the owner of three mortgages on land in Isabella county, and of certain shares of stock in the Isabella County State Bank.

"On the 25th day of October, 1932, John Jackman, with his son, Howard, went to the home of Charles B. Magennis, a notary public, and there executed and acknowledged written assignments to Howard of each of these three mortgages prepared by the notary.   After signing these, he handed them to Howard, saying: 'Those are yours. * * * I am giving those to you, and I know you will do the right thing. * * * Put them in the safety deposit box.'

"It also appears that on the same occasion John Jackman had with him three earlier assignments of the same mortgages, made out to plaintiff and his wife, which were used by the notary in preparing the new assignments, and that after the latter had been drafted, the notary asked John Jackman what should be done with the old ones, John Jackman said: 'Tear them up,' and that he was not satisfied with them.   The notary did tear them up and threw them into his waste basket.

"Howard Jackman left the notary's with the new assignments in his pocket, and had possession of them the following day.   They next appear after the death of John Jackman, when they are found in an envelope marked in the handwriting of John Jackman, 'Howard's personal papers,' in a safety deposit box in the Peoples National Bank.   This box had been rented by John Jackman since 1927, and Howard Jackman had rented the next adjoining

safety deposit box. Sometime in February, 1933, John Jackman arranged with the bank to have his box joint or mutual so that either himself or Howard could and did have the right to enter it. While Howard never did open the box until after John's death, it is undisputed that he had a key to the box given to him by his father.

"It is also undisputed that during the period between the making of the assignments and John Jackman's death, he made statements to other persons to the effect that he had given the mortgages to Howard for the purpose of helping Howard to pay for the education of his children.

"The mortgages themselves, together with the promissory notes accompanying them, were, until after John Jackman's death, in a safety deposit box rented by John Jackman at the Isabella County State Bank at Mt. Pleasant. Howard Jackman never collected any of the income on the notes and mortgages during his father's lifetime.

"The record is so barren of testimony as to the bank stock that plaintiff apparently has abandoned all claims as to that item.

"Based on the above detailed facts, plaintiff has filed his bill to compel defendant to restore these mortgages to the estate of John Jackman so that he may share in them as an heir of his father.

"While the bill sets up fraud and undue influence in the procurement of these assignments, the issue has been limited by agreement of counsel as contained in the 'Order upon motion to strike portions of bill of complaint' to the single question as to whether or not there was a sufficient and valid delivery of these mortgage securities to Howard Jackman by John Jackman during his lifetime as to give Howard Jackman title thereto.

"As was said in *Shepard* v. *Shepard,* 164 Mich. 183, 200:

" 'There are, however, certain well-settled general principles governing the question. * * * There must be an absolute delivery with the intention of making a gift, and passing title. The delivery must be according to the nature of the property. * * * And it has also been

held that the delivery of the written assignment of the chose in action is a good delivery of the chose in action, and is sufficient to support a gift. * * * Although delivery is essential to perfect the gift, it is not necessary that the donee should retain the property in his possession. The subsequent possession by the donor * * * is not necessarily incompatible with the donee's dominion over the property; and, if satisfactorily explained, will not divest the donee of the title to the property when once it has been acquired by him. * * * In the application of this rule, it is well settled that if there has been an actual or constructive delivery of the subject-matter of the gifts, with the intent to vest title, the fact that the donor retains possession of the same for any purpose is not sufficient to defeat the gift; nor is the gift defeated by the fact that the donor reserved to himself the use or income from the subject-matter of the gift.'

"Here there is an actual physical delivery by the donor to the donee evidenced by written assignments of the mortgages and notes. The fact that they were later placed in a safety deposit box to which both the donor and donee had a joint right of entry, and the further fact that the donee did not choose to remove them from the joint box to his exclusive dominion, or that the donor may have reserved to himself the income from the subject-matter of the gift, are not sufficient to divest the donee of the title he acquired by assignment. The principles announced in *Shepard* v. *Shepard, supra,* are determinative of every question raised in the instant case.

"It may be true that holding this gift to be valid works a seemingly unfair division of John Jackman's property in giving more to one son than to the other, but that John Jackman did himself; and as was said in *Keller* v. *McConville,* 175 Mich. 479, 493: 'Courts are not permitted to make equitable distribution of estates, but are concerned only in giving effect to the legal acts of decedents.'

"An order may be prepared dismissing the bill of complaint and dissolving the temporary injunction heretofore issued, with costs to be taxed in favor of defendant."

Its decree is affirmed, with costs.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.