304 P.2d 650

Beverly Cecelia GRAY, a minor under the age of eighteen years who sues by her guardian, Lucy Gray, Plaintiff-Respondent,

v.

Agnes GRAY and R. T. Hale, Administrator of the Estate of Cecil Gray, deceased, and First Security Bank, a National Association of Idaho, Defendants-Appellants.

No. 8434.

Supreme Court of Idaho.

Oct. 23, 1956.

As Modified on Denial of Rehearing Dec. 20, 1956.

Gee & Hargraves, Zener & Peterson, Pocatello, for appellant.

442

Anderson & Anderson, Pocatello, for respondent.

TAYLOR, Chief Justice.

Plaintiff (respondent), Beverly Cecelia Gray, is the minor daughter of the deceased, Cecil Gray, and Lucy Gray (respondent, guardian ad litem). Cecil Gray and Lucy Gray were divorced in June, 1951. Cecil Gray and Agnes Gray (defendant-appellant) married December 14, 1951, divorced September 11, 1952, and remarried January 2, 1953, and remained married up to the death of Cecil Gray, February 9, 1954. The defendant (appellant), R. T. Hale, is the administrator of the estate of Cecil Gray, deceased.

This action was brought by Beverly to recover personal property in the possession of the administrator and which is claimed by Agnes Gray as community property of herself and the deceased, Cecil Gray. Plaintiff's claim is based upon alleged gifts of the property by the deceased during his lifetime. The cause was submitted to the trial court upon a stipulation of facts supplemented by the testimony of Beverly, Lucy, and Agnes.

The trial court concluded that the property was the separate property of the deceased; that he had made valid gifts thereof to the plaintiff during his lifetime; and entered judgment for plaintiff, from which this appeal was taken. These conclusions are assigned as error.

Although not raised by appellant, we have considered the question of the jurisdiction of the district court to determine the character of property of an estate within the jurisdiction of the probate court. Const. Art. 5, § 21. We conclude that the district court had jurisdiction to hear and determine the issues presented without encroaching upon the jurisdiction of the probate court. Const. Art. 5, § 20; § 15–803, I.C.; Hunter v. Clawson, 70 Idaho 324, 216 P.2d 949. A determination of the character of the property, as community or separate, is involved in the issue as to the validity of the alleged gifts. Anderson v. Idaho Mutual Benefit Association, 77 Idaho 373, 292 P.2d 760.

The following items of property, claimed by plaintiff, were in the possession of the decedent at the time of his death, and are included in the inventory of his estate:

1953 Chrysler New Yorker Club Coupe.
1941 Diamond T truck.
1946 GMC truck.
1953 Chevrolet 2-ton truck, Motor LEA 385,262.
1953 Chevrolet ½-ton truck, Motor LBM 111,848.
D6 Caterpillar tractor.
Trailer, serial No. TRA 2864.

The evidence supports the finding that the 1941 Diamond T truck and the 1946 GMC truck were acquired by the decedent before his marriage to Agnes Gray and were his separate property. It is stipulated that the Chevrolet 2-ton truck and the Chevrolet ½-ton truck were purchased in 1953, and at the time two trucks of the same type, but of 1951 year model, were traded in for credit upon the purchase price of the two Chevrolet trucks. This, with the facts hereinafter stated in relation to decedent's worth at time of his marriage to defendant, and his earnings during the marriage, is sufficient to support the conclusion that the two Chevrolet trucks were separate property of deceased. The evidence is not clear as to the date of the purchase of the Chrysler New Yorker. Assuming that it was purchased January 14, 1954, as contended by defendants, the evidence supports the finding that it was separate property of the deceased. The purchase price was $3,000. $1,196.08 of this was paid by a check drawn on the Downey State Bank, where separate funds of deceased had been deposited in a joint account with plaintiff. Defendant Agnes testified the balance was paid in cash, some

of which deceased "had been carrying around with him, and the other part he got from the bank."

The only evidence regarding the D6 Caterpillar tractor is the testimony of Beverly that her father gave it to her before his marriage to Agnes. The court properly concluded it was separate property. The only evidence regarding the trailer claimed by plaintiff is its listing in the inventory, in which it is not separately appraised, but is characterized as a trailer to go with the truck. In such circumstances it was properly held to be of the same character as the truck—separate property.

In the years 1951, 1952, and 1953 the deceased gave financial statements to his bank showing net worth as follows: February 13, 1951, $41,559; April 4, 1952, $46,236; April 13, 1953, $49,538. Following his death his estate was inventoried and appraised, in the current probate proceedings, at $20,693.75. His income tax returns for the years 1951, 1952, and 1953, including upward adjustments made by the internal revenue service for the years 1951 and 1952, show net income as follows: 1951, $2,796.87; 1952, $961.16; 1953, $3,387.57.

Granting that allowance should be made for over-estimation of net worth in the bank statements, in view of their purpose, and the high depreciation rate normal to contracting equipment constituting the bulk of the assets listed, the statements, compared to the inventory, show a substantial decline in net worth during the last period of the marriage relationship between deceased and Agnes. The tax returns show net income barely enough to cover ordinary living costs.

After Cecil's death, there was found in a safe deposit box rented by him at the First Security Bank in Pocatello, the sum of $3,800 in cash, which had been placed in the box by the deceased. The source of this money is not shown except speculatively in the testimony of Agnes, wherein she says that on three occasions in 1953 she accompanied him to the bank, on one of which he went into the First Security Bank, where he had no checking account, "with $300.00 in his pocket and he came out without any." He had bought a loader in the spring of 1953, for $1,250. He sold the loader in July, 1953, "and he took the check into the First Security Bank to cash it and he didn't come out with any money." On the third occasion he had gone to the First Security Bank with a check payable to himself in the amount of $400, which he left with the bank for collection, but she was not with him when he later collected the proceeds and did not know what he did with it. The $300 and $400 items she testified were earned by deceased in his contracting business. Based upon the presumption that the loader acquired during the marriage was com-

munity property, there being no other evidence concerning it, we think it fair to assume that the proceeds of the sale of the loader, and the $300 item, went into the safe deposit box, and were community property. The witness did not testify as to the amount received upon the sale of the loader. Her testimony that it was sold a short time after it was purchased would support an assumption that it was sold for a price at or near the amount paid for it. The court should have found that $1,550 of the $3,800 in the box was community property, and the balance separate property of deceased.

In September, 1953, the deceased and the plaintiff, Beverly Gray, entered into a joint account agreement with the Downey State Bank. All of the money deposited to this account was deposited by the deceased and all withdrawals were made by him. After his death there was to the credit of the owners of that account, $1,803. The evidence, as herein outlined, supports the court's conclusion that the money deposited by the deceased in that account was his separate property.

We come now to the validity of the gifts, which plaintiff contends were made to her by the deceased during his lifetime. As to the vehicles, the claim is based upon the testimony of the plaintiff that the deceased had declared his intention of leaving all of his property to her, and that he had at the times he acquired the vehicles, had the certificates of title thereto issued in plaintiff's name. The vehicles were never delivered into plaintiff's possession, but were at all times retained and used by the deceased in his business, and treated by him as his own property. At least one of such vehicles he had traded in on a new vehicle while the certificate of title was outstanding in the name of the plaintiff.

In many jurisdictions it is held that the delivery by the donor to the donee of a written instrument, conveying personal property to the donee, is sufficient to meet the requirement of delivery to effectuate an otherwise valid gift, even though the donor retains actual possession of the property itself. Coffin v. Hyde, 35 Idaho 247, 205 P. 736; Sylvain v. Page, 84 Mont. 424, 276 P. 16, 63 A.L.R. 528, Annotation 537; McDonald v. Hewlett, 102 Cal.App.2d 680, 228 P.2d 83; Thatcher v. Merriam, Utah, 240 P.2d 266; Smith v. Acorn, D.C.Mun.App., 32 A.2d 252; Annotation 48 A.L.R.2d 1405. But such authorities quite unanimously hold that the written instrument by which the gift is effected must be delivered to the donee. Smith v. Acorn, supra; 38 C.J.S., Gifts, § 22 b, p. 803; Annotation 48 A.L.R.2d 1405 at 1417. In this case the certificates of title were retained by Cecil Gray. Neither the property nor the certificates having been delivered, the attempted gifts were ineffective and the vehicles remained

the property of the deceased. Lewis County v. State Bank of Peck, 31 Idaho 244, 170 P. 98; Zimmerman v. Fawkes, 70 Idaho 389, 219 P.2d 951; Goggins v. Herndon, 73 Idaho 169, 249 P.2d 203; Sullivan v. Hudgins, 303 Mass. 442, 22 N.E.2d 43. The same is true of the D6 Caterpillar tractor and the trailer. Neither was delivered to the intended donee, nor was any written conveyance thereof delivered.

■ For a number of years the deceased had rented the safe deposit box in the First Security Bank at Pocatello. On September 5, 1953, he had the box placed in the name of Beverly Gray. It was thereafter maintained on the records of the bank in her name as lessee and was so held at the time of Cecil's death. At the time of the transfer the following writing was delivered to the bank:

"Please *alow* Cecil J. Gray to *inter* my box with this signature.
Miss Beverly C. Gray
Cecil J. Gray".

There was no joint tenancy agreement entered into with reference either to the box or its contents. There is nothing in the evidence of any act or word on the part of the deceased referring to the contents by which he purported to give or transfer the contents to the plaintiff. There is no evidence that she placed anything in the box or that she ever actually had access thereto. On the contrary, it is stipulated that Cecil retained the only key to the box and that the money found therein upon his death was placed there by him. Again the attempted gift failed for want of delivery. Hynes v. White, 47 Cal.App. 549, 190 P. 836; Wakefield v. Wakefield, 37 Cal.App.2d 648, 99 P.2d 1105; Hausfelder v. Security-First Nat. Bank, Cal.App., 176 P.2d 84; Hartt v. Brimmer, Wyo., 287 P.2d 638; Jackman v. Jackman, 271 Mich. 585, 260 N.W. 769; Reeves v. Lyon, 224 Iowa 659, 277 N.W. 749; Lowry v. Florida Nat. Bank of Jacksonville, Fla., 42 So.2d 368; Annotation 14 A.L.R.2d 948.

The joint tenancy entered into by the plaintiff and the deceased with the Downey State Bank, among other things, provides:

"The undersigned, Joint Depositors hereby agree, each with the other and with Downey State Bank, Downey, Idaho, that all sums heretofore or hereafter deposited by said joint depositors or either of them with said bank, to their credit as such joint depositors, in the account above mentioned, shall be owned by them jointly, with the right of survivorship and be subject to the check, or order or receipt of either of them, or the SURVIVOR of them, and payments thereof, to either shall discharge said bank from liability to either, or the heirs,

executors, administrators or assigns of either."

Our statute, abrogating the common law rule of joint tenancy, does not abolish such tenancy. It merely declares that such an interest is in common "unless declared in its creation to be a joint interest, * * *." § 55–104, I.C. Here the tenancy was created by a written agreement in which the parties declared the tenancy to be joint. Thus a valid gift of a joint interest in the account, with right of survivorship, was made and effectively delivered to the plaintiff at the time the account was created, and the balance in the account at the time of Cecil's death was and is the property of the plaintiff. § 26–1014, I.C.; Young v. Young, 126 Cal. App. 306, 14 P.2d 580; Wallace v. Riley, 23 Cal.App.2d 654, 74 P.2d 807; In re Gaines' Estate, 15 Cal.2d 255, 100 P.2d 1055; Jorgensen v. Dahlstrom, 53 Cal.App. 2d 322, 127 P.2d 551; Beach v. Holland, Or., 142 P.2d 990, 149 A.L.R. 866; Kilfoy v. Fritz, Cal.App., 270 P.2d 579; Barton v. Hooker, Okl., 283 P.2d 514; In re Jansen's Estate, Wyo., 284 P.2d 1086; Medeiros v. Cotta, Cal.App., 286 P.2d 546; Goldston v. Randolph, 293 Mass. 253, 199 N.E. 896, 103 A.L.R. 1117, Annotation 1123; In re Wilson's Estate, 404 Ill. 207, 88 N.E.2d 662, 14 A.L.R.2d 940; Loth v. Loth, 227 Minn. 387, 35 N.W.2d 542, 6 A.L.R.2d 176; Annotation 48 A.L.R. 189; Annotation 66 A.L.R. 881; Annotation 135 A.L.R. 993; Annotation 149 A.L.R. 879.

All the elements of a valid gift inter vivos may or may not be present in the creation of a joint tenancy in a bank account. A gift may or may not be involved. The essentials of a valid joint tenancy account are those set out in the statutes, §§ 26–1014 and 55–104, I.C. See annotations supra. These essentials being present, the right of the survivor does not depend upon the fact of a completed gift.

The judgment is reversed, except as to the proceeds of the joint account in the Downey State Bank, as to which it is affirmed. The cause is remanded with directions to the district court to enter judgment in conformity with this opinion, and directing that the property involved, other than the joint account, remain in the hands of the defendant Hale, as administrator of the Estate of Cecil Gray, to be disposed of by him according to law and the lawful orders of the probate court.

Costs to appellants.

KEETON, PORTER, ANDERSON and SMITH, JJ., concur.