# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

Estate of STANLEY MORRIS,

Plaintiff-Appellant,

v

MARY MORRIS,

Defendant-Appellee.

UNPUBLISHED
May 1, 2018

No. 336304
Oakland Probate Court
LC No. 2013-350325-DE

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

This case, which involves a dispute between siblings regarding the bank account of their deceased father, comes before us a second time. In the instant appeal, plaintiff, the Estate of Stanley Morris, appeals as of right the probate court's order ruling that defendant, Mary Morris, was entitled to a judgment of no cause of action against plaintiff. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This Court's previous opinion set forth the relevant substantive and procedural facts as follows:

> The decedent, Stanley Morris, was the father of four children: (1) Mel, who served as the personal representative of the decedent's estate, (2) defendant, (3) John Christopher "Chris" Morris, and (4) Robert Morris. In 2002, the decedent executed a will that distributed his estate equally among his four children. The decedent's most significant asset was his home in Livonia. The decedent sold his home in 2006 and deposited the proceeds into one of his accounts with Bank of America (BoA). Mel was listed as a joint owner of the decedent's BoA accounts. According to Mel, he was named as a joint owner of the BoA accounts for the decedent's convenience. Mel never used the account funds for his own purposes, and he considered the funds the property of the decedent. Defendant was later added as a joint owner of the BoA accounts. Defendant's name began to appear on the account statements in March or April 2007, but the documents making her a joint owner of the accounts were never produced. Mel produced a signature card dated October 17, 2008, but the card

-1-

does not provide any information about defendant's status as a joint account owner.

From April 2007 until the decedent's death in June 2011, defendant depleted the funds in the BoA accounts. Defendant does not deny that the funds were used mostly to pay expenses or make purchases for herself and her daughter, but she contends that she was authorized to do so because she was a joint owner of the accounts and that she had decedent's permission to make purchases for her and her daughter's benefit. Plaintiff brought this action for conversion, fraud, and related torts arising from defendant's use of the funds. The case proceeded to a bench trial. After plaintiff rested, the trial court granted defendant's motion for involuntary dismissal, stating:

> . . . I am going to grant the motion to dismiss the case. I do agree with [defense counsel] that the plaintiff has not met his burden of proof. You did not present any evidence that would rebut the presumption of a joint account, you did not provide any of – there's no evidence submitted or supported by testimony of a breach of a fiduciary duty, conversion, misrepresentation, silent fraud, negligence, account of convenience or undue influence.
>
> And moreover, with regard to your argument about the Will that says split the home four ways, that Will was in 2002. That doesn't mean anything. He could spend – he could have sold it in 2003 and spent it completely by 2004. How would that change things, the money's not there?
>
> But that's not the point. The point is, and while – perhaps everything alleged is true, you have not met your burden of proof, and therefore, I'm going to dismiss this case. [*Estate of Morris v Morris*, unpublished per curiam opinion of the Court of Appeals, issued August 11, 2016 (Docket No. 326507), pp 1-2 (alterations in original).]

Plaintiff appealed as of right the trial court's order granting defendant's motion for involuntary dismissal. *Id*. at 1. On appeal, this Court affirmed in part, reversed in part, and remanded the matter for further proceedings. *Id*. at 13. Specifically, this Court reversed "the portion of the trial court's order dismissing plaintiff's claim for conversion."[1] *Id*. at 11. In reaching this holding, this Court first concluded in pertinent part that the joint account act, MCL 487.711 *et seq*. did not apply because there was no evidence that the decedent created a statutory joint account pursuant to the requirements of the joint account act. *Id*. at 4-5. Next, this Court

---

[1] This Court specifically did not reverse the trial court's dismissal of plaintiff's claims for fraud, misrepresentation, silent fraud, and breach of fiduciary duty because plaintiff did not appeal the trial court's dismissal of those claims. *Estate of Morris*, unpub op at 11.

analyzed the scope of the presumption of joint ownership and survivorship contained in MCL 487.703 by construing the statutory language. *Id.* at 5-8. On this point, this Court explained as follows:

> MCL 487.703 does not provide that all joint accounts carry the presumption of joint ownership and survivorship; it provides this presumption only when the deposit is made in the prescribed form. *We conclude that this language, properly interpreted, required evidence that the decedent created the joint account with the intent to convey to defendant joint ownership and right of survivorship before the presumption of joint ownership and survivorship could arise.* In the absence of such proof, there can be no prima facie evidence to rebut, and the ordinary standard of proof for civil cases, preponderance of the evidence, governs the outcome. In that situation, plaintiff could prevail by proving by a preponderance of the evidence that the decedent did not intend for ownership to vest in defendant. [*Id.* at 8 (emphasis added).]

Finally, this Court concluded that in the instant case, there was

> no documentary evidence to confirm either the presence or absence of the survivorship language in the documents creating the joint accounts with defendant as a joint owner. Accordingly, there is no presumption of joint ownership with rights of survivorship. The trial court erred when it stated that plaintiff did not present evidence "that would rebut the presumption of a joint account." Rather, the trial court should have weighed the conflicting evidence regarding the decedent's intent in creating the joint account. [*Id.* at 10.]

We explained the trial court's role on remand as follows:

> The trial court, as the finder of fact, was responsible for weighing the witnesses' testimony and deciding the credibility contest between Mel and defendant. The trial court's statement that "perhaps everything alleged is true, you have not met your burden of proof," indicates that the court did not make a determination of the witnesses' credibility. The court granted involuntary dismissal because it believed that plaintiff did not meet its burden of proof to rebut the presumption of a joint account. The trial court's focus on rebuttal of the presumption was erroneous. The proper inquiry was whether plaintiff proved that the decedent did not intend for ownership of the funds to vest in defendant. Plaintiff's evidence was sufficient to support an inference that he did not. Consequently, we remand this case to the trial court for reconsideration, without applying a presumption of joint ownership. [*Id.* at 10-11.]

On remand, the trial court issued an opinion and order, in which it stated that it would reconsider the case without applying a presumption of joint ownership, pursuant to the instructions of this Court. The trial court noted that the focus of the dispute in this matter was the ownership of the contents of the decedent's bank account from 2006 until his death on June 5, 2011, and the trial court proceeded to summarize the testimony from trial.

-3-

The trial court found that Mel, defendant, and the decedent were all joint title holders of the BoA accounts at issue, and the trial court stated that the two trial witnesses who had information about the ownership of the account were Mel and defendant. Further, the trial court found that the "determination of the credibility of Mel Morris and that of [defendant] is dispositive and will resolve this case." More specifically, the trial court found that Mel's testimony on "key issues" was "not credible" and that defendant's testimony on "key issues" was "credible" and supported by bank records submitted as an exhibit.

In discussing Mel's testimony, the trial court found that Mel testified that he was added to the joint bank account as a matter of convenience only and that he believed all of the money in the account belonged to the decedent because it was the decedent's account. The trial court further found that Mel refused to admit that the amount of money that was deposited into the account between April 2007 and the decedent's death exceeded the amount of the decedent's total income during this period, even when including the proceeds from the real estate sale as part of the decedent's total income. The trial court also found that Mel failed to otherwise explain this discrepancy. Based on this testimony, the trial court additionally found that Mel's testimony was not credible on the issue whether deposits into the account were made solely by the decedent. The trial court further found that Mel's testimony did not establish that the money deposited into the BoA account during the relevant time period was the exclusive property of the decedent and that it had not been established that the decedent was the sole source of the funds in the account or that the account was purely an account of convenience.

In discussing defendant's testimony, the trial court found that defendant testified that she did not want to use the joint bank account for all her living expenses but that the decedent wanted her to do so. The trial court found that defendant also testified that the decedent told her that she did not need to ask permission to use the funds in the joint account. The trial court further found that considering the trial testimony as a whole, it was evident that the decedent had always supported defendant and her daughter, Lindsay. Additionally, the trial court found that defendant's testimony that she took a "loan" from the account did not establish that the funds in the joint account were not jointly owned because defendant also testified that she did not initially believe that the funds were hers to freely use, that it was important to her to be self-sufficient, and that it is not uncommon for an individual to take a "loan" from his or her own 401k. The trial court further found that the proceeds from the real estate sale became commingled in the joint account once they were deposited into that account. As previously stated, the trial court found that defendant's testimony was credible.

In conclusion, the trial court found that the evidence showed that defendant accepted an *inter vivos* gift from the decedent through the joint bank account, noting that both defendant and the decedent used the funds from the account as each of them wished. The trial court found that defendant accepted this gift in November 2007, based on the bank records. The trial court further found that Mel refused to accept an *inter vivos* gift from the decedent. Next, the trial court found that plaintiff had failed to present sufficient evidence to establish judicial estoppel because no evidence was presented to show that defendant was required to amend her bankruptcy schedule where her bankruptcy was filed in January 2007 and no evidence was presented that she knew she was a joint account title holder until November 2007. Finally, the trial court concluded that there were no funds to distribute from the joint account to the decedent's estate because defendant was the beneficiary of an *inter vivos* gift from the decedent.

The trial court ruled that defendant was entitled to a judgement of no cause of action against plaintiff.

This appeal followed.

## II. STANDARD OF REVIEW

"Findings of fact made by a probate court sitting without a jury will not be reversed unless clearly erroneous." *In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Conservatorship of Brody*, 321 Mich App 332, 336; ___ NW2d___ (2017) (quotation marks and citation omitted). "The reviewing court will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *Id.* (quotation marks and citation omitted). "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

## III. ANALYSIS

In *Osius v Dingell*, 375 Mich 605, 611; 134 NW2d 657 (1965), our Supreme Court explained the fundamental legal principles applicable to an *inter vivos* gift as follows:

> It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift. It is essential that title pass to the donee. As to delivery, it must be unconditional and it may be either actual or constructive; the property may be given to the donee or to someone for him. Such delivery must place the property within the dominion and control of the donee. This means that a gift *inter vivos* must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor. As to acceptance, it is said that the donee is presumed to have accepted the gift where such is beneficial. [Citations omitted.]

Joint bank accounts with rights of survivorship are typically created pursuant to statute, and in such a situation, these transfers are treated as statutory creations rather than *inter vivos* gifts. See *Jacques v Jacques*, 352 Mich 127, 134; 89 NW2d 451, 455 (1958) ("In Michigan the vesting of title to funds in another by the creation of a joint bank account with right of survivorship is a statutory method of transfer of title. While such a concept has some of the aspects of a gift *inter vivos*, it is plainly not a common-law gift *inter vivos* because the donor retains an element of control and the power of revocation.").

In the prior appeal in this case, this Court determined that "the decedent created the joint account with the intent to convey to defendant joint ownership and right of survivorship before the presumption of joint ownership and survivorship could arise" under MCL 487.703. This

Court further determined that there was no documentary evidence to confirm the presence or absence of survivorship language in the documents creating the joint account. Hence, this Court concluded that the trial court needed to weigh the conflicting evidence on remand to discern the decedent's intent in creating the joint account. *Estate of Morris*, unpub op at 8, 10. As we also noted in our prior opinion, our Supreme Court has explained that when the statutory requirements in MCL 487.703 have not been fulfilled (i.e., as pertinent here, making a deposit in a form that includes survivorship language), "we next inquire whether there was anything else in the instrument itself or in the circumstances surrounding the creation of the joint account which would afford any indication of the intent of the party or parties creating it." *Leib v Genesee Merchants Bank & Trust Co*, 371 Mich 89, 94; 123 NW2d 140 (1963); see also *Estate of Morris*, unpub op at 8, quoting *Leib*, 371 Mich at 94.

In *Negaunee Nat'l Bank v Le Beau*, 195 Mich 502, 503-504, 508; 161 NW 974 (1917), our Supreme Court resolved a dispute between two siblings over the funds in their deceased father's bank account on the ground that the decedent had made an *inter vivos* gift to one of the siblings, Sophia Charles, through the creation of a joint account with her. In reaching this conclusion, our Supreme Court reasoned that the decedent had created in Charles "a present estate in the fund, equal to his own, together with the sole right to said fund in case of his death"; that the decedent "retained no more control over the fund than did his daughter, Sophia Charles"; and that "either could have withdrawn the entire amount during the lifetime of the other." *Id*. at 508. Although the Court mentioned a former statute that was substantially similar in language and substance to the current MCL 487.703, the Court did not analyze the application of the statute in *Negaunee* or resolve the appeal on that ground. *Id*. at 508-509.

Additionally, "it is well settled that if there has been an actual or constructive delivery of the subject-matter of the gifts, with the intent to vest title, the fact that the donor retains possession of the same for any purpose is not sufficient to defeat the gift; nor is the gift defeated by the fact that the donor reserved to himself the use or income from the subject-matter of the gift." *Jackman v Jackman*, 271 Mich 585, 589; 260 NW 769, 770 (1935) (quotation marks and citation omitted). In *Jackman*, our Supreme Court held that a father's assignment of mortgages to his son was a valid gift even though the assignment documents were subsequently stored, until after the father's death, in a safety deposit box that was jointly held by both the father and son and to which both the father and son had access, and the son did not collect the income on the mortgages during his father's lifetime. *Id*. at 587-589.

In this case, the trial court found that defendant testified that the decedent wanted her to use the funds in the joint bank account as she wished and that the decedent told her that she did not have to ask for permission to use the funds in the joint account. The trial court found defendant's testimony on key issues related to the ownership of the funds in the joint account to be credible, including defendant's explanation for her use of the word "loan" when describing certain uses of the money. Furthermore, the trial court found that Mel's testimony relating to key issues about the ownership of the joint account to be not credible. Based on the trial testimony, we cannot say that the trial court's factual findings were clearly erroneous. *In re Conservatorship of Brody*, 321 Mich App at 336. Plaintiff essentially attempts on appeal to gain another opportunity to impeach defendant's credibility and argues that we should determine the parties' credibility in the first instance. However, this is contrary to the role of the appellate

court and the deference that we afford to the probate court's credibility determinations based on the probate court's superior position to make such judgments. *Id.*

Accordingly, the facts as found by the trial court satisfy the elements of an *inter vivos* gift, which was made from the decedent to defendant, because defendant had the full ability to withdraw and use any or all of the funds in the joint account as she wished during her father's lifetime: i.e., the decedent intended to pass title to defendant, there was actual delivery, and defendant accepted the gift. *Osius*, 375 Mich at 611; *Negaunee Nat'l Bank*, 195 Mich at 508. The fact that the decedent simultaneously retained access to the funds in the joint account did not make the gift invalid. *Jackman*, 271 Mich at 589. The trial court also found that Mel did not accept a gift from the decedent because Mel testified that he was only added to the account for convenience and that he did not believe that the money in the joint account was his. We also cannot say that this factual finding is clearly erroneous. *In re Conservatorship of Brody*, 321 Mich App at 336. Without acceptance, there is no gift. *Osius*, 375 Mich at 611. Thus, the trial court did not err by determining that defendant was the beneficiary of an *inter vivos* gift from the decedent, that there were no funds to distribute to the estate as a result, and that defendant was therefore entitled to a judgment of no cause of action against plaintiff. *In re Conservatorship of Brody*, 321 Mich App at 336. We also conclude that the probate court appropriately followed this Court's remand orders, because in reconsidering the case, the probate court weighed the conflicting evidence, determined the credibility of the witnesses, and discerned the decedent's intent with respect to the ownership of the disputed funds without applying a presumption of joint ownership in the account. *Schumacher*, 275 Mich App at 127.

Next, plaintiff argues that the probate court erred by ruling that the doctrine of judicial estoppel did not prevent defendant from claiming ownership in the joint account funds. However, plaintiff's entire argument on appeal is based on plaintiff's interpretation of an affidavit that was never admitted into evidence at trial. Moreover, plaintiff does not cite any legal authority or make any cogent legal argument to explain how the doctrine of judicial estoppel is applicable to this specific factual scenario involving a joint bank account and gift *inter vivos* where defendant received her interest at some point after filing for bankruptcy. Plaintiff also does not cite any legal authority or offer any explanation of how the trial court's ruling on this issue was erroneous beyond apparently asking this Court to make factual determinations de novo on appeal, contrary to the applicable standard of review. See *In re Conservatorship of Brody*, 321 Mich App at 336. Furthermore, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Goolsby v City of Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984) (quotation marks and citation omitted). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Therefore, we conclude that this issue is abandoned.

Next, plaintiff argues that the probate court found that defendant had asserted facts contrary to her claim of ownership in the joint bank account when the probate court denied defendant's summary disposition motion at a July 2013 hearing, that the circuit court upheld this ruling when defendant appealed, and that the law of the case doctrine therefore precluded the probate court from finding defendant's testimony at trial to be credible.

"Whether the law of the case doctrine applies is a question of law that we review de novo." *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013). "Under the law of the case doctrine, if an appellate court resolves a legal issue and remands to the trial court for further proceedings, the legal question determined by the appellate court will not be decided differently in a subsequent appeal in the same case if the facts remain materially the same." *In re Wayne Co Treasurer*, 265 Mich App 285, 297; 698 NW2d 879 (2005). In this case, the circuit court merely denied defendant's application for leave to appeal the probate court's order denying defendant's motion for summary disposition. The circuit court did not make any decision on the merits of the matter. Therefore, the circuit court did not resolve any legal issue, and the law of the case doctrine is inapplicable under these circumstances. *Id*.

Finally, plaintiff argues that the opinion and order of the probate court judge was the product of judicial bias or prejudice.

MCR 2.003(C) sets forth grounds for disqualifying a judge, and it provides in pertinent part as follows:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
>> (a) The judge is biased or prejudiced against a party or attorney.
>
>> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risks of actual bias impacting due process rights of a party . . . or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

"[A]s a general rule, a trial judge is not disqualified absent a showing of actual bias or prejudice." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation marks and citation omitted). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Id*. (quotation marks and citation omitted). Furthermore,

> Repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice. [*Id*. at 597-598 (quotation marks and citation omitted).]

In this case, the entire focus of plaintiff's judicial bias argument is on plaintiff's disagreement with the probate court's credibility findings. However, the mere fact that a judge rules against a party does not demonstrate bias or the presence of deep-seated favoritism or antagonism. *Id*. Plaintiff does not point to any fact beyond unfavorable rulings by the probate court to demonstrate bias, and plaintiff therefore has failed to overcome the heavy presumption of judicial impartiality. *Id*. at 597.

Affirmed.  No costs are awarded.  MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Jonathan Tukel